Filed 9/23/16  In re Miguel O. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re MIGUEL O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL O.,<br><br>        Defendant and Appellant. | A147685<br><br>(San Mateo County<br>Super. Ct. No. 83092) |

Miguel O. appeals from a dispositional order committing him to juvenile hall for the maximum term of imprisonment.  He contends the disposition was impermissibly punitive and unrelated to rehabilitation.  He also argues that long-term commitment to juvenile hall is not statutorily authorized under Welfare and Institutions Code section 730.[1]  Finally, he claims the juvenile court committed reversible error in denying his belated request for a contested dispositional hearing.  We affirm.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prior History with the Probation Department and the Juvenile Court*

Miguel has an extensive history with the probation department and the juvenile court. In 2009, when he was 11 years old, he was placed on informal probation for extortion. In 2009 and 2012, he was reported for truancy.

In May 2013, Miguel was adjudged a ward of the court for possessing a weapon on school grounds and placed on probation. In 2014, his school reported that he had many unexcused absences and his attendance did not improve despite numerous contacts with his family. In January 2015, the juvenile court found him in violation of probation and ordered him to serve 29 days in therapeutic detention and 45 days on the Electronic Monitoring Program.

In April 2015, Miguel was the subject of a petition for vandalism. The charge was sustained, and the court ordered him to complete 90 days of therapeutic intervention. In August 2015, the San Mateo County Gang Task Force found gang-related items and marijuana in Miguel's bedroom during a probation search. He admitted to using Xanax and marijuana. He was detained in juvenile hall for alleged violation of probation. In October 2015, he was found in violation of probation. A placement review hearing was scheduled for November 10, 2015. Miguel refused to interview with group homes for placement and stated that he did not want to go to a group home. The placement review hearing was continued twice because of his refusal to interview with any group homes.

*Current Petition*

On November 21, 2015, while he was in juvenile hall for violation of probation, Miguel punched a group supervisor. He was 17 years old at the time. The San Mateo County District Attorney filed the current wardship petition under section 602, alleging felony battery upon a custodial officer (count 1; Pen. Code, § 243.1), felony battery with injury on emergency personnel (count 2; Pen. Code, § 243, subd. (c)(1)), and misdemeanor battery with injury on a peace officer (count 3; *id*., subd. (c)(2)). The juvenile court ordered Miguel to remain detained in juvenile hall.

At a jurisdictional hearing on December 22, 2015, Miguel admitted count 2, felony battery. Miguel understood that the maximum term of confinement was three years, eight months.

In anticipation of the dispositional hearing, the probation department filed a report recommending Miguel be committed to juvenile hall for therapeutic detention for 365 days, with 115 days credit for time served and 72 days credit for good behavior. The probation department observed that it had "utilized many sources to gain compliance from the Minor to no avail." Miguel refused to engage in services, he often stated he did not want or need counseling, he continued to refuse to participate in interviews for placement, and he assaulted a group supervisor. Under the department's recommendation, if he earned good behavior credit, Miguel would be 18 years old upon release. At that point, the department observed, "Any future law violations will be handled through the adult criminal justice system."

At the scheduled dispositional hearing on January 6, 2016, the juvenile court continued the disposition to allow the probation department to find a suitable placement for Miguel. The court stated, "I need probation to look nationwide and find me a commitment location where [Miguel] can be committed for his rehabilitation with or without his cooperation." At the end of the hearing, the court denied Miguel's request for a family visit, noting that he recently had threatened a teacher. Miguel's mother stated, "He is going from bad to worse." The court responded, "I know. I am trying to find something that is going to help." Miguel's mother thanked the court.

On January 26, 2016, the probation department filed an addendum report. Miguel continued to refuse placement, and he "stated he would physically resist/fight if anyone attempted to take him out of his room for placement purposes." A probation officer referred Miguel to three residential programs (two in Iowa and one in Wyoming), but all three denied Miguel acceptance. One program cited his " 'violent tendencies toward others and frequent non-compliance in treatment settings,' " another program cited " 'his persistent threats to assault peers and staff,' " and the third program denied Miguel "because of his ongoing refusal to participate." The probation department again

3

recommended that Miguel be detained in juvenile hall for therapeutic detention for 365 days, now with 136 days of credit for time served and 72 days for good behavior.

At the continued dispositional hearing held January 28, 2016, Miguel submitted on the probation department's recommendation. His attorney told the court, "This has been my client's wish, is to just serve out his time in the [juvenile] hall." The court asked what was remaining of the maximum term of confinement, and the court officer responded two years, eight months, and 29 days. The court ordered Miguel to serve the maximum term in juvenile hall. The court stated, "He will serve every bit of that time in our juvenile hall. [¶] That is modifiable to a placement, but it will have to go back . . . for a suitable placement." After the juvenile court announced the disposition, Miguel's attorney requested a contested dispositional hearing, which was denied.

## DISCUSSION

A. *The Dispositional Order Was Not an Abuse of Discretion*

Miguel contends the juvenile court abused its discretion in ordering a disposition that was unrelated to his rehabilitation. We disagree.

1. *Legal Principles*

Section 202, subdivision (b), provides that minors who are "under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter." "Punishment" is defined as "the imposition of sanctions," but "does not include retribution." (§ 202, subd. (e).) Permissible sanctions include conditions of probation, "[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch," and "[c]ommitment of the minor to the Division of Juvenile Facilities." (§ 202, subd. (e)(4)–(5).)

In determining the appropriate disposition for a delinquent minor, the juvenile court "shall consider, in addition to relevant and material evidence, (1) the age of the

minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.) "The court may place the minor on probation, with or without declaring the minor a ward of the court, or it may declare the minor a ward and order appropriate treatment and placement. (§§ 725, 726.) Placement options include the home of a relative or extended family member; a suitable licensed community care facility or foster home; juvenile hall; a ranch, camp or forestry camp; and, the most restrictive setting, [the Division of Juvenile Facilities]. (§§ 727, subd. (a), 730, subd. (a), 731, subd. (a)(4).)" (*In re Greg F*. (2012) 55 Cal.4th 393, 404.) "The statutory scheme governing juvenile delinquency is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' [Citation.] Flexibility is the hallmark of juvenile court law, in both delinquency and dependency interventions." (*Id*. at p. 411.)

We review a juvenile court's commitment order for an abuse of discretion. (*In re Robert H*. (2002) 96 Cal.App.4th 1317, 1329–1330.) "An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them. [Citations.] In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law. [Citations.]" (*In re Michael D*. (1987) 188 Cal.App.3d 1392, 1395.)

2.      *Analysis*

We see no abuse of discretion in the juvenile court's disposition. Rather, we agree with the Attorney General that, given Miguel's history of missing school, substance abuse, violence, and threats of violence,[2] the juvenile court could reasonably determine that Miguel required the "secured and supervised setting" of juvenile hall both to address

---

[2] In addition to assaulting a group supervisor and threatening to fight anyone who tried to take him out of his room for placement, it was reported that Miguel previously "trashed" his house and punched a hole in the wall out of anger, and his mother was "extremely afraid of her son," and he threatened to "knock out" a teacher.

the danger he posed to public safety and to provide him with rehabilitative services for his own good. Moreover, as the Attorney General observes, the juvenile court's options were substantially curtailed because of Miguel's own conduct. Less restrictive interventions had failed. He had violated probation on many occasions, he failed to participate in services such as counseling, and he steadfastly refused to interview for placement. Under the circumstances, we cannot say the disposition of long-term commitment to juvenile hall was an abuse of discretion.[3]

Miguel argues the juvenile court abused its discretion "in ordering a disposition that was purely punitive." He relies on the juvenile court's statement to him at a placement hearing in December 2015, "You are not going to win this war with me." He maintains that the "logical inference is that the juvenile court was not going to let [him] win 'this war,'" and asserts, "using excessive punishment as a lever to obtain [his] acquiescence to losing the 'war' declared by the juvenile court still constituted a punishment with no relation to this minor's rehabilitation." To fully consider this argument, we review the court's statement in the context of its attempts to find a suitable placement for Miguel.

At a hearing on December 1, 2015, Miguel entered a denial on the current petition, and his attorney noted that Miguel was waiting for placement in his prior proceedings. A probation officer reported to the court that Miguel hung up the telephone on two group homes that had tried to interview him. The juvenile court addressed Miguel, "Really? [¶] What were you thinking?" Miguel said he refused only one phone call, but agreed he had refused to talk to a potential placement. The court asked why, and Miguel responded, "I thought they were too far away. Some PO told me it was by Sacramento." He said, "I'm not going to Sacramento." The court told him: "You don't get to choose.

---

[3] The juvenile court's deviation from the probation department's recommendation by itself does not show an abuse of discretion. "[H]aving considered them, the court 'may reject *in toto* the report and recommendation of the probation officer.'" (*People v. Warner* (1978) 20 Cal.3d 678, 683, superseded by statute on another ground as recognized in *People v. Douglas* (1999) 20 Cal.4th 85, 92, fn. 6.)

I am choosing, with the assistance of probation. You are going to go, and you are going to play by the rules. [¶] You don't get to live in the juvenile hall. You act like you want to spend the rest of your life in the juvenile hall, and I am not going to allow that. All right?" Miguel said, "Uh-huh." The court told Miguel if he would not go to a placement in the state, the court would have no choice but to send him out of state. The court also explained, "We look for what is the best fit. There might be a local placement. But if it is not right for him, he is not going to it."

At a placement review hearing on December 4, 2015, the juvenile court took the hearing off calendar in light of Miguel's current petition. The court addressed Miguel: "Here is the deal: You are not going to stay in the juvenile hall long-term no matter what you do. You are going somewhere else. Where you go is up to me and the probation department. [¶] However, if you get in more trouble in the juvenile hall, you could be adding something else to the menu called the DJJ." Miguel said he already knew what that was. The court responded, "Good. I am glad you are so smart. Now get out of my courtroom."

Another placement review hearing was held on December 18, 2015. The probation officer reported that two group homes had found Miguel too aggressive and would not accept him. Another program, Tahoe Turning Point, would interview him if he were willing to participate. The court addressed Miguel: "All right, Miguel. *You are not going to win this war with me*. Do you understand that?" (Italics added.) He said, "Yes, I do, ma'am." The court responded, "Good. Okay. Back to the hall."

At the jurisdictional hearing on December 22, 2015, the court accepted Miguel's admission to count 2, vacated his next placement review, and suspended the general placement efforts.

Miguel's next hearing was the dispositional hearing January 6, 2016. As we have discussed, the probation department recommended that he be detained in juvenile hall until he was 18 years old, at which point, he could be released, and any future criminal behavior would "be handled through the adult criminal justice system." The department noted that it had "utilized many sources to gain compliance from the Minor to no avail."

7

As Miguel describes, the probation department determined he "was no longer amenable to the rehabilitative efforts of the juvenile justice system." The juvenile court, however, did not accept the probation department's recommendation. Instead, it continued the hearing so the probation department could search nationwide for a juvenile placement "where [Miguel could] be committed *for his rehabilitation* with or without his cooperation." (Italics added.) At the end of the hearing, Miguel's mother said he was "going from bad to worse," and the court responded that it knew and was "trying to find something that is going to help."

At the continued dispositional hearing on January 28, 2016, the court observed, "[Miguel] just decided he is going to get his way. That has been his problem his whole life. He has gotten away with making all the decisions, and he thinks he is going to continue to do that." The court imposed the maximum term to be served in juvenile hall, but modifiable to a placement. Miguel's attorney then asked for a contested disposition. The court denied the request, explaining, "He can choose if he wants to go to a placement or if he wants to serve the two years, eight months."

Having thus reviewed the record, we disagree with Miguel's characterization of the court's dispositional order as "punishment with no relation to this minor's rehabilitation." To the contrary, it is apparent that the disposition was intended to encourage Miguel to cooperate in the court's efforts to find a placement that could provide rehabilitation services to meet his needs. Given Miguel's long history with the juvenile court and his recent intransigence regarding placement, the juvenile court's disposition properly held him accountable for his behavior and was appropriate for his circumstances. (§ 202, subd. (b).) Before the court ordered the disposition, Miguel submitted without argument to the probation department's recommendation that he stay in juvenile hall until he was 18 years old, at which point, he would be released and subject to the adult criminal justice system. But the juvenile court persisted in its efforts to provide Miguel an appropriate residential placement where he would receive rehabilitative services within the *juvenile* justice system. Rather than "purely punitive," we view the juvenile court's disposition as "seek[ing] to avoid the unkind leniency which

8

all too often leads the juvenile to further and more aggravated violations of law and consequently . . . to a sentence of state prison by a felony court." (*In re Ricardo M*. (1975) 52 Cal.App.3d 744, 749.)

B.     *The Disposition Committing Miguel to Juvenile Hall Was Not Unauthorized*

Miguel next argues that commitment to juvenile hall was not authorized because San Mateo County maintains a camp for delinquent minors.  He relies on section 730, subdivision (a), which provides:  "When a minor is adjudged a ward of the court on the ground that he or she is a person described by Section 602, the court . . . may commit the minor to a juvenile home, ranch, camp, or forestry camp.  *If there is no county juvenile home, ranch, camp, or forestry camp within the county*, the court may commit the minor to the county juvenile hall."  (Italics added.)

Miguel reads section 730, subdivision (a), as precluding a juvenile hall commitment when a camp is available in the county.  (See *In re Gerald B*. (1980) 105 Cal.App.3d 119, 126 [if probation were revoked, "the court would have been expressly prohibited from ordering the minor's *commitment* to the county juvenile hall unless a less restrictive facility was unavailable"].)

However, in this case, the Attorney General asserts, "nothing in the record establishes that the county's camp facilities had the capacity or willingness to accept [Miguel].  Thus, the camp option may have been unavailable to him in the first place."  In his reply, Miguel does not point to anything in the record demonstrating that a county camp placement was in fact available to him.  Instead, he argues, "this is *an omission* that may be addressed on remand, where [he] will have the opportunity denied him when the juvenile court refused to permit his trial counsel to present evidence and argument at the dispositional hearing."  (Italics added.)  His argument presumes that he will prevail in his third and final claim—that the juvenile court erred in denying his request for a contested dispositional hearing, and he is therefore entitled to remand and a new hearing.  But, as we will explain in the next section, we reject Miguel's final claim.  Accordingly, even if we assume, arguendo, that Miguel's interpretation of section 730, subdivision (a), is

9

correct, his argument fails because he cannot show, as factual matter, that placement at a county camp was an available option for him.

In addition, we are not convinced Miguel's reading of section 730 is correct. The literal language of the statute merely authorizes commitments to juvenile hall where the other types of listed facilities are not available in the county. The statute appears to address a situation where a placement at one of the listed types of facilities would be appropriate, but the placement is not available. Here, there is no evidence in the record that the county camp was an appropriate placement. Instead, the record demonstrates the juvenile court tried to find an appropriate program for Miguel over the course of many placement hearings and asked the probation department to search nationwide, suggesting the county camp was not an appropriate option.

Moreover, Miguel's interpretation of the statute would create a conflict with section 202, subdivision (e)(4), which expressly and broadly authorizes the juvenile courts to impose sanctions, including "[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch." (See *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107 ["We do not . . . consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. . . . We must harmonize the statutes various parts by considering it in the context of the statutory framework as a whole"].)

*In re Debra A*. (1975) 48 Cal.App.3d 327, cited by Miguel, does not persuade us otherwise. In *Debra A*., the juvenile court placed the minor with her aunt, except on weekends, when she was to be " 'committed [to] the Juvenile Home, Ranch, Forestry Camp, or County Juvenile Hall, as determined by the probation officer.' " (*Id*. at p. 329.) The appellate court found this order invalid. The court held the juvenile court could not delegate to the probation officer its discretion to determine the place of detention. (*Id*. at p. 330.) The court further observed that the order was erroneous in mentioning juvenile hall as a possible placement because the county had a facility for the detention of girls, Las Palmas School for Girls. (*Ibid*.) The matter was remanded for redetermination of the

disposition (*ibid*.) when, presumably, the question could be considered whether a placement at the facility for girls was available. But we do not read *Debra A*. as precluding a commitment to juvenile hall when there is no evidence that a county camp is either appropriate or available. In any event, *Debra A*. did not reconcile any such interpretation of section 730, subdivision (a), with the language of section 202, subdivision (e)(4).

In sum, we reject Miguel's contention that the disposition committing him to juvenile hall was statutorily unauthorized.

C.     *Miguel is Not Entitled to Another Dispositional Hearing*

Section 706 provides that "[a]fter finding that a minor is a person described in Section 601 or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor." Miguel claims the juvenile court committed reversible error in denying his request for a contested dispositional hearing. This claim lacks merit.

Miguel relies on *In re Deon W*. (1998) 64 Cal.App.4th 143, in which the court stated, "It is well established that ' "[t]he court is required to examine the entire [and current] dispositional picture whenever the minor comes before the court for disposition." ' " (*Id*. at p. 147.) The court continued: " ' "It cannot treat an earlier order as 'self-executing' or 'automatic.' " ' " [Citation.] [The minor] was entitled to notice, to have a current social study prepared for the hearing and to produce evidence indicating there were other more appropriate dispositions available to the court." (*Ibid*.)

The present case comports with *In re Deon W*. Miguel was given notice of the dispositional hearing, an addendum probation department report was filed two days before the hearing, and he had an opportunity to be heard and present evidence before the juvenile court made its disposition.[4] Miguel submitted on the probation department's

---

[4] Miguel was also aware of what the maximum term of confinement was. He stated that he understood the maximum term of confinement was three years, eight months when he admitted to count 2 of the current petition, and the maximum term was stated in each of the probation department's reports. The amount of credit he earned for time served and good behavior was also stated in the probation reports.

11

recommendation. His attorney told the court, "This has been my client's wish, is to just serve out his time in the [juvenile] hall." After the court announced its dispositional order, Miguel's attorney asked for a contested dispositional hearing. The juvenile court denied the request, stating, "We have already had disposition. This is a matter of him refusing to go to a [general placement], so I am imposing disposition."

We discern no error in the court's denial of the request for a contested hearing. Miguel had just been given an opportunity to present evidence and argument, and he chose not to present any evidence and informed the court that he wished "to just serve out his time" in juvenile hall. Miguel offers no authority for the proposition that he was entitled to a second dispositional hearing merely because he was unhappy with the disposition ordered or because it was different from the probation department's recommendation.

The Attorney General further argues that Miguel's attorney "made no showing of what, if any, evidence she would present that had not already been considered or how such evidence would have made any difference." Thus, even if we were to assume for the sake of argument the juvenile court erred, Miguel cannot show prejudice.

**DISPOSITION**

The judgment is affirmed.

_____
Miller, J.

We concur:


_____
Richman, Acting P.J.


_____
Stewart, J.

13